IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> APPROXIMATELY $90,600 IN U.S. ) <br> CURRENCY SEIZED FROM GUILLERMO ) <br> RAYA ON JUNE 30, 2020 AT ) <br> THE CHARLOTTE-DOUGLAS ) <br> INTERNATIONAL AIRPORT ) | **Civil No. 3:20-cv-656** |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES Plaintiff the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and alleges as follows:

**INTRODUCTION**

1. This is a civil action *in rem* against $90,600 in United States currency seized from Guillermo Raya on June 30, 2020 at the Charlotte-Douglas International Airport (the "Currency").

2. During an interdiction operation at the Charlotte Airport, a drug detection dog positively alerted to the odor of narcotics on two suitcases—each belonging to Guillermo Raya—in two separate open-air sniffs of a baggage cart loaded with approximately twenty bags. Upon obtaining and executing a search warrant for the bags, law enforcement discovered $90,600 in vacuum-sealed cash stuffed and hidden inside shoes, clothes, and a towel within the suitcases. Then, in an independent blind screen, the Currency was placed in a lineup inside one of four

matching boxes and a second drug detection dog positively alerted to the box with the Currency. Guillermo Raya, who has a criminal history of cultivating and transporting/selling marijuana, also has a travel history consistent with drug-trafficking: making at least eleven one-way trips in 2020 alone between locations around the US and California (a known drug-source state), with all of the tickets purchased last minute (either the day of travel or one day prior).

3. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

4. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

6. Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

7. The Currency has been seized and is now within the Western District of North Carolina.

8. Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Jonathan Cerdan, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The interdiction*

9. On June 30, 2020, Guillermo Raya was traveling from Charlotte, North Carolina to Los Angeles, California on an American Airlines flight with a layover at JFK airport in New York City.

10. In Charlotte, Raya checked two identical gray metal roller suitcases. Raya's luggage was loaded on a TUG[1] luggage cart to load onto the American Airlines plane bound for JFK airport with a final destination of Los Angeles.

11. That day, HSI TFOs Cerdan, S. Brown, and K. Osuch were conducting an interdiction operation at the Charlotte airport, which included, *inter alia*, observing luggage bound for LAX, a known drug-source location.

12. As part of the interdiction operation, TFO Cerdan deployed his K9 partner "Cali" for an open-air sniff of approximately 20 pieces of luggage on a TUG luggage cart located near Gate B14:

---

[1] A "TUG" is the powered equipment used by the airline industry to tow baggage carts to and from the terminal/cargo facility and the aircraft.



13. K9 Cali is a properly trained and certified narcotics detection canine trained to detect narcotics odors including marijuana, cocaine, methamphetamine, ecstasy, and heroin.

14. K9 Cali—given a "find" command and deployed to conduct an open air sniff at her own pace on a 10 foot lead—began to bracket at around 20 feet from the luggage cart and then pulled towards the cart.

15. K9 Cali then alerted to the odor of narcotics in or on a gray suitcase, whose luggage tag bore Guillermo Raya's name.

16. TFO Cerdan pulled the suitcase from the luggage cart for further investigation and put K9 Cali in her mobile kennel.

17. Then, after noticing a second similar suitcase with a luggage tag also bearing Raya's name, TFO Cerdan returned to the TUG luggage cart and again deployed K9 Cali to conduct a second open air sniff at her own pace on a 10 foot lead.

18. Similar to the first K9 sniff, TFO Cerdan gave Cali the "find" command, and Cali began to bracket when she was about 10 feet from the TUG luggage cart, pulling towards the cart and then alerting to the odor of narcotics on or in Raya's second gray suitcase.

19. TFO Cerdan pulled the second suitcase for further investigation and obtained a search warrant for both of Raya's bags.[2]

20. Execution of the search warrant revealed that the two gray suitcases contained, *inter alia*, bundles of vacuum sealed cash. Vacuum-sealing is commonly used in drug trafficking as an attempted means to conceal the odor of illegal drugs.

21. The Currency was stuffed and concealed among the inside of two Nike shoes (one from each of the matching shoe pair in each gray suitcase), a pair of jeans, and wrapped in a white towel:

---

[2] Additionally, one of the standard conditions of American Airline's conditions of carriage is that "[t]o fly on American, you must . . . [a]llow your baggage to be inspected by Customs, the TSA or other government officials" and "[a]llow you and your bags to be searched for explosives, dangerous weapons or banned substances." *See* https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp?anchorEvent=false&from=footer



22. This currency totaled $90,600.00 and was comprised of 168 one-hundred-dollar bills, 144 fifty-dollar-bills, 3,323 twenty-dollar-bills, 9 ten-dollar bills, and 10 five-dollar bills. The majority of the cash was held together by rubber bands.

23. Once the vacuum seal was removed, TFO Cerdan detected a strong odor of marijuana coming from the Currency.

24. The Currency was then placed in a blind line-up of four matching boxes—with one containing the Currency—for another, independent K9 sniff.

25. A second, properly trained and certified narcotics detection dog, K9 Benny, was deployed, and positively alerted to the odor of narcotics on the box containing the Currency.

26. The Currency was seized, and a copy of the warrant, inventory of seized property, and HSI seized property receipt were placed in Raya's suitcase. The suitcases were returned to American Airlines to be transported to Los Angeles.

27. The Currency was transported to Loomis, where it was counted and deposited into an account established to hold seized funds.

28. Law enforcement did not speak to Raya on the day of the search (due to, *inter alia*, the COVID pandemic), and Raya and his luggage flew on to Los Angeles.

***Raya has made no attempt to contact law enforcement about the Currency***

29. Since the seizure on June 30, 2020, Raya has not made any attempts to contact law enforcement by either telephone or mail.

30. After Raya failed to initiate contact, attempts by law enforcement to contact Raya at two phone numbers identified—phone numbers obtained from American Airlines and CLEAR[3]—were likewise unsuccessful, with voicemail messages to Raya's numbers left unreturned.

31. Raya's refusal to speak with law enforcement regarding the Currency after its seizure further supports the conclusion that the Currency did not have a legitimate source or purpose.

***Raya's travel history***

32. Raya's travel history is consistent with drug trafficking. Specifically, Raya made at least eleven one-way flights between various locations and either Los Angeles or Fresno, California (a known drug-source state) from February 2020 to August 2020.

33. Each of these eleven tickets were purchased last minute—either on the same day as the travel or only one day in advance.

---

[3] CLEAR is a service that helps enrolled passengers expedite security screening at airports. *See* https://www.clearme.com/

*Raya's drug-related criminal history*

34. Since 2016, Raya has been convicted in California of unlawfully cultivating more than six marijuana plants and of selling marijuana or transporting marijuana for sale without the required state license.

### FIRST CLAIM FOR RELIEF – THE $90,600 IN CURRENCY
### (21 U.S.C. § 881(a)(6))

35. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 34 above as if fully set forth herein.

36. The $90,600 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

37. Upon information and belief, the following person may claim an interest in the Currency seized on June 30, 2020:

Guillermo Raya
450 E. Crestwood Avenue
Woodlake, CA 93286

### CONCLUSION AND PRAYER FOR RELIEF

38. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and if forfeitable to the United States of America.

WHEREFORE, the United States of America respectfully prays the Court that:

(1) a warrant for the arrest of the Defendant Property be issued;

(2) due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3) judgment be entered declaring the Defendant Property to be condemned and forfeited to the United States of America for disposition according to law; and

(4) the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Defendant Property as required by 28 U.S.C. § 1921.

This 25th day of November, 2020.

Respectfully submitted,

R. ANDREW MURRAY
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
NC Bar No. 53217
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

## VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 24 day of November, 2020.

_____
Task Force Officer Jonathan Cerden
Department of Homeland Security,
Homeland Security Investigations